at all, arguing it's not to be seen for a few minutes per side. Mr. Allen, the floor is yours. May it please the court, and for the record, my name is James P. Allen, Sr. I'm an attorney in Michigan. And I come to you this morning        support of the Nasser Beydoun v. Wataniya Restaurants Holding at all. On behalf of my client, Nasser Beydoun, a man who was held against his will for a period approximately two years in a country that has one of the most abysmal human rights records on the planet. Mr. Beydoun was recruited to take a position with a country that was based in Qatar. The people who owned the company engaged the services of a person by the name of Donald Jordan who was submitted an affidavit in this case, and upon whose affidavit the motion to dismiss was primarily based. Mr. Jordan is a licensed attorney in the state of Michigan and has been a member in good standing since 1994. He remains an attorney licensed to and it was no coincidence that Mr. Jordan was selected to do the recruitment of my client, Mr. Beydoun for the venture. Why do you say that? Why do you say it was no coincidence? Is there some nefarious background there? Your Honor, I believe it has everything to do with the fact that Michigan is, outside of the Middle East, one of two in this country cities that has the largest concentration of Arab Americans again, outside of the Middle East. It's a particularly well developed community of Arab Americans. Thanks to the automotive industry, one of the earliest places where Arab Americans came to settle and where they have advanced to the highest degree. Tie that up for us. Why is that important for this court to take jurisdiction of this case? As Mr. Turfey briefed the issue, if you're going to create a company that is going to look to bring western culture to the Middle East, the place that you want to do that is the state of Michigan, Detroit, where the American Arab Chamber of Commerce is headquartered and located, which is the oldest and largest chamber of commerce of its type. Mr. Beydoun was a former chairman of that organization. I won't go through the detail of his resume. It's all been set forth in the brief as to what his background in the community is and was, and why Watania would look for someone like him in the state of Michigan. Even if that's the case, really this is not a dispute over whether the long arm statute of Michigan applies. It gets into the due process argument. What say you to the argument that the issues involved in this controversy have little or no connection with the state of Michigan? I say that the district court respectfully misapplied the test set forth in Mahasco in that the test requires that the defendant act in the state of Michigan. I think we can demonstrate that the defendant did act in the state of Michigan and that they caused a consequence in the forum state in several ways. Mr. Jordan lived there, did business there, right? Correct. And he discussed this job with your client? That's correct, Your Honor. As I understand it, they negotiated a deal, but that never came into fruition. No, Your Honor. It did come into fruition. There was a dispute over when he was supposed to report. Right. And your client called it off. My client ultimately reported, under the terms of the agreement, that he negotiated with Mr. Jordan in the state of Michigan. I understand all that, and I'm prepared to say yes, the Michigan long-arm statute is satisfied. But the issues arose in Qatar, did they not? Some of them did, Your Honor. Some of them did. The issues of which he is complaining did not arise in Qatar. Which ones did not? Yes. Well, Your Honor, his absence from the state of Michigan, which is an action or a consequence, is felt in Michigan. The fact that his family is not able to have him. There's a count for loss of consortium in the complaint that belongs to his wife, Misa Balbaki. Because she was in the state prison when he complained? Yes. But that was in accordance with Qatari law, was it not? Well, Your Honor, I wanted to get to the Qatari law. It seems to me that there's an awful lot that the defendants in this case have hung their hats on the validity of the Qatari law. This is not just the mere assertion of the rights of the Qatari company to revoke the exit visa of Mr. Beydoun. This is the purposeful imprisonment of somebody to extort money from him that he didn't owe them. And using the leverage that he has, or leverage that they have as a result of that. And what they've done is they've used the affidavit of Mr. Jordan, who himself is subject to the same Qatari law. And we're dismissing Mr. Beydoun's complaint and denying him access to our courts on the basis of Mr. Jordan's affidavit, which has not been subjected to cross-examination, where we cannot ask him, are you being threatened with the revocation of your exit permit as a means to induce you to provide the affidavit that you've provided? And that's the problem with dismissing the case with zero discovery into these issues. It seems to me that at the very least the court should be looking at a order of remand to provide us with the opportunity to conduct discovery on the issues that right now we are entirely reliant upon untested veerments in an affidavit from somebody  knows the situation that Mr. Beydoun went through and knows the situation of thousands of immigrant workers who are still held captive in Qatar. And this court can take judicial notice of the results of the application of kafala law in this case. And I don't believe that this country should be bound by the strict application of a law that permits an employer, not a government body, not a government agency, but an employer to revoke someone's right to leave the jurisdiction once they've decided in an at-will situation that they no longer wish to be. Mr. Allen, I'm interested in the balance of your answer to Judge Rice's interesting question. If you could tick off those features, answer his question. Your first answer was his absence. His absence, Your Honor. So what else? Deprivation. Before you go on to that, you said that there's a claim for consortium here and that that somehow should establish personal jurisdiction under the due process clause. But you would concede a consortium claim is a derivative claim, would you not? I would, Your Honor. And that a derivative claim itself cannot establish personal jurisdiction. I would. The prong of the test that I was dealing with was the first prong of the test, which requires a consequence in Michigan. That is one of many consequences. Another, Your Honor, would be... Answer my question, though. A derivative claim. The answer is yes, Your Honor. But it is also a consequence. The activities that occurred that we're talking about, that established personal jurisdiction are the very activities of the recruitment. The order that he had to travel to Michigan in order to establish business contacts. Was there anything tortuous that occurred in the state of Michigan? Yes, Your Honor. I would argue that a bulk of what we're talking about here are things that were... the consequences that occurred here were consequences that were felt in Michigan. Certainly Mr... That's not my question. Were there any torts committed in the state of Michigan? And if so, what were those torts? The misrepresentation that... the misrepresentations that were made by Mr. Jordan about... That alleged in the complaint there was a misrepresentation in the state of Michigan? Yes, Your Honor. The fact of the matter is again the investigation that occurred after the dispute between Mr. Badoon and his employer occurred entirely in Michigan. There's criticism because we have based that on a hearsay affidavit, but at the same time we haven't had the opportunity to haul people into court. I think we have your argument, Mr. Allen. Thank you. Your time has expired. We'll hear from Mr. King. One question that I wish I had asked Mr. Allen is who are the Appleys in this matter? The Appleys, may it please the court, good morning. My name is John King. The Appleys are all Middle Eastern businesses and Middle Eastern individuals, mostly from Qatar. Let me ask you this. Isn't the appellant or the plaintiff in the court below required to establish personal jurisdiction over each person sued? Yes, that's absolutely correct. And hasn't there been a lumping together of everyone sued under the umbrella of Watanaya? Indeed you are correct, Your Honor. We make that point in our brief that all, or almost all, but as I recall it, all of the arguments are directed towards Watanaya and not the other two businesses or the four individuals who are also defendants, Appleys in this matter. I've diverted you. Go ahead. Thank you. This is a case about personal jurisdiction. That's all that this case is about. The district court correctly held that exercising jurisdiction in this case over those seven defendants would not satisfy the constitutional due process concerns that arise from the vast case law in this area. This is not a Michigan long-arm statute case. And more specifically, and I'll get into these as the court desires, that the recruitment, that Watanaya's recruitment of a Michigan citizen for a job that involved running a business in the Middle East and only running a business in the Middle East did not demonstrate any intention to form ongoing substantial contact with the state of Michigan. Two, that the claims did not arise from conduct in Michigan, but instead arose entirely from tortious acts allegedly committed in Qatar. Mr. Allen just told me that he has a claim for misrepresentations made in the state of Michigan. Is that true? I am unaware of that and I'm searching to find any suggestion of that in any of the papers below. The discussion that I'm aware of from the affidavits, there is some dispute, I'm not suggesting otherwise, between Mr. Jordan and Mr. Badoon involves where they met. Perhaps whether or not an offer was formally extended in Michigan or whether it was withdrawn and re-extended once Mr. Badoon traveled to Qatar. I don't see any suggestion or recall any suggestion of any misrepresentations and nothing about that has any... That wouldn't be material to the... Exactly. That's exactly right. Nothing about that would be material. This is a dispute that arose years after Mr. Badoon was in Qatar. The issue was the demise of the business. In Mr. Badoon's view, it was occasioned by the economics of 2008-2009. In our client's view, it was occasioned by the mismanagement of the company by Mr. Badoon. Whichever of those two assertions is correct, the entire dispute arises from that set of facts and then what happens when there's litigation in Qatar between the seven defendants at Belize and Mr. Badoon. That's what this dispute is about. The fact that Mr. Jordan traveled to Michigan, that there was communication between Qatar and Michigan in order for Mr. Badoon to ultimately to arrive in Qatar is of no jurisdictional importance or no particular jurisdictional importance I believe is the standard that this court has employed in for example, the Euroglass case. The third standard, or the third criteria rather, is whether or not the exercise of jurisdiction here would be reasonable. The court concluded that it would not be. Unless there are any further questions, I'll briefly discuss each of those points. On the purposeful availment side, I think if you look at all of the cases, all of the decisions by this court, all of the decisions below, they all make the same point. In order for there to be purposeful availment, the contact must be ongoing, it must be continuous, it must be far-reaching or it must be substantial. It cannot be random, attenuated, or without this case, even remotely shows ongoing, continuous activity. That's true from the defendants themselves, that's true from the business, and that's true, as I mentioned a moment ago, about the dispute. At the risk of offending my colleagues, I believe the issue, the paramount issue, is whether the gravamen of the lawsuit occurred in Qatar or in the state of Michigan. Mr. Allen appears to adopt a but-for analysis. But for the original negotiations in Michigan, none of this would have occurred. Personally, I'd like you to address that particular prong, because I think that's at least from my perspective the issue before us. Certainly. That prong, of course, is the arising from prong. The test in this court's community trust decision is whether the defendants' contacts relate to the operative facts and the nature of the controversy. As I said, that's not our fact pattern at all. This is a dispute that relates only to how Mr. Beydoun ran the business in Qatar. I think the argument, and there are many cases, including some district court cases, where, similar to our facts, there are employment disputes where the conduct takes place overseas, and the courts have held no personal jurisdiction under those circumstances. I think the but-for test that Mr. Allen is referring to is cited in their brief, and that comes from a district court case, Catalano v. BRI. I think it's, in our view, safe to say that there is a far over-broad reading of the case to suggest that there is a but-for test that simply says but-for the fact that Mr. Beydoun came from Michigan, there is personal jurisdiction in this case. What appellants are really suggesting is no matter how tenuous the conduct, in fact, whether it doesn't really relate to the controversy at all, there can be jurisdiction perhaps not two years, perhaps not five years, ten years after Mr. Beydoun arrives in Qatar. That's not the law, and I think that tortured reading of Catalano was also not consistent with the facts of the case that they referred to. There was a case which involved a Michigan plaintiff who purchased a travel package from a hotel in, I believe, Nevada. It was marketed through an airline, I believe American Airlines, and the whole point, the whole thrust of the business activity was to bring a resident of, in this case, Michigan, but really bring out-of-state residents to Nevada, and the plaintiff was then injured in the hotel room. The court said but-for the act of marketing in an injured. I think we can all get that. That's not our facts. That direct relationship between a targeted marketing of individuals out-of-state to bring them in-state, that's the but-for analysis that the district court applied in Catalano. Again, that's not our fact pattern, and there's no connection between what happened other than Mr. Jordan showing up, and Mr. Jordan discussing with Mr. Bedoon the employment decision that Mr. Bedoon ultimately made, and Mr. Bedoon arriving in Cotter-Muswell. I take it Mr. Jordan had no role in the choice to discharge, you know, to terminate Mr. Bedoon, or to affect a government intervention to retain him in the country, that sort of thing. I don't think there's any... Do we know of any? I don't. Any activity by Jordan beyond the Starbucks meeting or whatever where that meeting took place? I don't. I know there are facts in the record showing Mr. Jordan's role in the selection process. I don't recall any facts that suggest Mr. Jordan had anything to do with the dispute. He never acted in Qatar. He was in Qatar. He was in fact in Qatar at the time of the recruitment back in 2007. I'm unaware of facts suggesting that he had any involvement or any material involvement, certainly, in the dispute between Mr. Bedoon and his employer. And I'm unaware of any in the complaint. I do want to touch on another point that was made a moment ago about no coincidence, I think was the way Mr. Allen phrased it, that Mr. Jordan or Watania sought out Mr. Bedoon in Michigan. That's not an argument that was made below. In fact, it's an argument that is inconsistent with how I view the facts that were argued below. I think the point that the appellants were trying to make here is if it isn't sufficient that we reached out, that Watania reached out to Michigan to grab someone and bring them back, then perhaps it's significant that we reached out to the market in Detroit and reached out then to Michigan in order to bring somebody back. And that's simply, number one, not the facts of this case. The facts are clear from the affidavits and I think the undisputed facts and certainly from Mr. Bedoon's version of how the employment came to be, that he was selected and blessed by the relevant people in Qatar before Mr. Jordan even reached out to him. And that in fact Jordan traveled, after negotiations, traveled to Michigan and met at a Starbucks where they hammered out at least a part of the deal. I do submit, though, even if the facts were different, even if somehow Watania were looking for someone, anyone, in the Michigan area, which again is not the fact pattern, still that fact would not be of any jurisdictional importance here because it's a distinction without a difference. The point of all of the cases in this area as we understand them is if what is happening is bringing someone to operate a business in Qatar and the dispute arises out of that, as I believe the facts firmly show it does, that doesn't establish personal jurisdiction here. I think the final point, the final prong, the reasonableness prong, I won't spend much time on that unless there are any questions. The cases do accord particular deference to overseas entities in light of the unique burdens placed on someone who has to defend themselves overseas. That's a pretty clear tenant of the cases and in this case there was, as I said, no purposeful availment. There's simply no way to conclude that the District Court was incorrect in deciding that this dispute did not arise from the contact with Michigan and in any event it would be unreasonable given the burden that would be imposed on Watania. Thank you. Mr. Allen, I don't want to consume all of your time, but I would like your response to Mr. King's statement that Katalon is very distinguishable. Then I have a procedural question. Your Honor, I would argue that the conclusion that it's distinguishable is based entirely upon the view that the Court has of where the damages occurred and where the tortious behavior occurred as well. There was tortious behavior and I can't hide the fact that Mr. Beydoun was imprisoned in his home in Qatar. I can't hide that the worst of the torts that were committed here were there. But we can't also avoid the fact that what happened here was also tortious. We have it happening in two different places. We have investigators being dispatched over here, not only to get private facts and invade his privacy and his wife's privacy and the privacy of his children who had to endure the whispers about how he had stolen money from these investigators that were dispatched from Qatar. We have to deal with the defamation that occurred over here and that is something that is a man of Mr. Beydoun's prominence. That is an issue that is, I think, vital to this case. I think that is where the jurisdiction, the personal jurisdiction attaches here. The fact that there was tortious activity occurring in two different locations doesn't preclude the fact that we can't detach from that action. And the fact that we can't establish it through first-hand knowledge is simply a function of the fact that we've been denied the right to discovery. Here we have a foreign entity that is being given preference or deference over someone who is a United States citizen and a resident of the state of Michigan. I think you've answered the one question. How about, Judge Rice has another one. Another question. Procedural. You indicate you weren't granted the right to discover in the trial court. Certainly if you had facts that would have supported jurisdiction. If you didn't have those facts, you may well not have filed the lawsuit anyway because of Rule 11. But if you had those facts, and I'm assuming the complaint was filed in good faith, why didn't you attach affidavits or submit evidence as part of your memorandum contra and a motion to dismiss? It would have been nice to submit affidavits, Your Honor, but many of the people that were contacted have relatives and family in Qatar and are not going to voluntarily submit themselves to submit an affidavit. It was an act of courage for Mr. Shamut to do what he did. Giving me the ability to subpoena people for a sworn deposition and put them under oath is what would allow me to establish the facts that I believe that my client is now being precluded from establishing. The limited remand that the court could order could simply be to allow me the opportunity to discover what I know to be true, what I have a good faith to be true, based upon the statements from Mr. Shamut himself, whether they're first-hand or second-hand hearsay statements. I believe that there may be arguments that I could make that the statements are not necessarily hearsay because the statement that Mr. Mustafa, who was an employee of Watania, is a statement against a party interest. The question is, where is he in the company hierarchy and can those statements bind the company? I can't find that out. I can't ask to get the sworn testimony that I need to establish that fact unless I'm given the ability to conduct simple discovery into that insular issue. With the little time that I have remaining, I can tell you that Mr. Jordan did make a statement to the Qatari prosecutor. I believe it was a false statement. I've not had the opportunity to cross-examine Mr. Jordan about his false statements to the Qatari prosecutor. Why? Because the discovery has been denied. That false statement to the Qatari prosecutor was, again, it occurred in Qatar, I understand that, but I can't delve into his false statements. I have not had the opportunity to do that discovery. I suppose the natural question is, where would that discovery take place? Lots of it needs to take place in Qatar. There are four flights a day that leave Metropolitan Detroit Airport to Qatar. If I have to go to Qatar to conduct discovery, I would certainly do that. I've conducted depositions in foreign countries, but the situs for this discovery needs to take place in terms of the jurisdiction. I believe that we have the largest law firm in the world that conducts litigation, international litigation, throughout the world. I believe that that is something that helps work out. Quite a few of your witnesses might be there. Mr. Jordan still does travel to the United States. I believe that we have the ability to compel his deposition. How many of these arguments about needed discovery, difficulty getting witnesses and the like were raised before the trial judge? There was no oral argument in this case, Your Honor. I've been involved in the case for a week. There's written argument. I've been involved in this case for a week. I don't know exactly what the proceedings were below, other than what I've been able to read through the docketing statements and the written submissions here. Was there a specific... I believe there were subpoenas that were issued and there was a motion to quash. I do believe that that occurred. The motion was granted pending the outcome here. The outcome on the personal jurisdiction issue, yes. Thank you. Do we have your argument? Appreciate it. The court will take the matter under advisement and issue an opinion in due course. Thank you, Your Honor. We'll have the next case, please.